STATE OF MARYLAND for the Use of John Lowell GLIEDMAN, Jeffrey Bruce Gliedman, Ellen Deborah Gliedman and Darcy Joan Gliedman, surviving infant children of Lester H. Gliedman and Gertrude Gliedman, Deceased, by their guardians and next friends Karl Eppstein and Anna K. Emerson Eppstein as Executors of the Estate of Lester H. Gliedman, Deceased, and Karl Eppstein and Anna K. Emerson Eppstein as Executors of the Estate of Gertrude Gliedman, Deceased

v.

CAPITAL AIRLINES, INC.

and

The United States of America.

STATE OF MARYLAND for the Use of Willa DICKSON, surviving widow and Michael Dickson, Patricia Dickson and Kelly Dickson, surviving infant children of James R. Dickson, Deceased, by Willa Dickson, their mother, next friend and guardian, and Willa Dickson as Administratrix of the Estate of James R. Dickson, Deceased

v.

CAPITAL AIRLINES, INC.

and

The United States of America.

Enriqueta L. TEN, Administratrix of the Goods, Chattels and Credits of Helen Irizarry, Deceased, and State of Maryland, To the Use of Enriqueta L. Ten, Cosme Irizarry, Lillian Irizarry, and Micheal Ten, Next of Kin of Helen Irizarry, Deceased

v.

UNITED STATES of America

and

Julius R. McCoy.

Civ. A. Nos. 11385, 11386, 11393.

United States District Court

D. Maryland.

April 3, 1967.

———◆——.

George L. Clarke, Buckmaster, White, Mindel & Clarke, George W. White, Jr., Baltimore, Md., for plaintiffs, Gliedman, Eppstein, and Dickson, Theodore E. Wolcott, New York City, of counsel.

John J. O'Connor, Jr., O'Connor & Preston, Baltimore, Md., and Lee S. Kreindler, Paul S. Edelman, Kreindler & Kreindler, New York City, for plaintiffs, Ten and Irizarry.

Paul F. Due, Baltimore, Md., and Richard W. Galiher, Washington, D. C., for defendant Capital Airlines.

John H. Mudd, Baltimore, Md., for defendant McCoy.

Thomas J. Kenney, U. S. Atty., and William E. Malloney, Dept. of Justice, for the United States.

NORTHROP, District Judge.

In three companion cases consolidated for trial, Civil Nos. 11385, 11386, and 11393, the plaintiffs move for summary judgment against the United States on the basis of collateral estoppel. In two of these cases, 11385 and 11386, Capital Airlines, one of the defendants, moves for summary judgment against the United States by requesting that the United States be estopped from claiming contribution against it. Capital Airlines is not a party in 11393.

Each of the cases, involving a survival action and a wrongful death action, arose out of a collision over Brunswick, Maryland, about three o'clock in the afternoon on May 20, 1958, between a small jet trainer, consigned to the Maryland National Guard and piloted by Julius R. McCoy, and an airplane owned and operated by Capital Airlines, Inc.

All the passengers aboard Capital's plane were killed. McCoy was ejected from the jet trainer and is the sole survivor. These suits were filed by the administrators and survivors of certain passengers of the Capital Airlines Viscount.

There are various actions against the United States, Capital Airlines, and McCoy pending in other jurisdictions. The ones that are of particular interest to the court for these motions are the cases in which the survivors and administrators of the Capital Airlines' pilot and co-pilot and Capital Airlines sued the United States in the United States District Court for the District of Columbia. State of Maryland for the Use of Meyer, etc. v. United States, Civil No. 1236–59, Dec. 6, 1961, aff'd, 116 U.S.App.D.C. 259, 322 F.2d 1009 (1963), rev'd on the issue of agency and remanded, 382 U.S. 158, 86 S.Ct. 304, 15 L.Ed.2d 226 (1965), 257 F. Supp. 768 (D.D.C.1966); State of Maryland for the Use of Vance Lewman Brady, etc. v. United States, Civil No. 1237–59, Dec. 6, 1961, aff'd 116 U.S.App.D.C. 259, 322 F.2d 1009 (1963), rev'd on the issue of agency and remanded, 382 U.S. 158, 86 S.Ct. 304, 15 L.Ed.2d 226 (1965), 257 F.Supp. 768 (D.D.C.1966); and Capital Airlines, Inc. v. United States, Civil No. 1238–59, D.D.C., Dec. 6, 1961, rev'd on damages, 116 U.S.App.D.C. 259, 322 F.2d 1009 (1963), rev'd on the issue of agency and remanded, 382 U.S. 158, 86 S.Ct. 304, 15 L.Ed.2d 226 (1965), 257 F.Supp. 768 (D.D.C.1966). These cases are again on appeal.

Before the court continues with the discussion of the principle of collateral estoppel, it must say a word about the other cases which arose out of the accident, more particularly the cases which proceeded through the United States District Court for the Western District of Pennsylvania, the United States Court of Appeals for the Third Circuit, and the United States Supreme Court. The reason for this recitation is that by agreement of all the attorneys for the parties named herein, including the United States, all of the discovery pro-

ceedings both in this court and in other courts were handled in a consolidated manner. The depositions, the interrogatories and answers thereto, and the requests for admissions and answers thereto were deemed to be applicable to all of the said actions. Needless to say, extensive depositions were taken, numerous exhibits marked, et cetera, so that the testimony, evidence and exhibits relating to liability would be the same in all of the pending cases. In fact, as to liability, the parties in the Pennsylvania cases proceeded on the transcript of the trial of the District of Columbia cases. State of Maryland for the Use of Levin, etc. v. United States and State of Maryland for the Use of Johns, etc. v. United States, 200 F.Supp. 475 (W.D.Pa.1961), rev'd on issue of agency, 329 F.2d 722 (3d Cir. 1964), aff'd 381 U.S. 41, 85 S. Ct. 1293, 14 L.Ed.2d 205 (1965), judgment modified and remanded, 382 U.S. 159, 86 S.Ct. 305, 15 L.Ed.2d 227 (1965).

The District of Columbia cases were tried before Judge Holtzoff in November of 1961. The issue of negligence litigated was that of Captain McCoy. At that time the court found that McCoy was an agent of the United States Government. However, this finding was set aside by the Supreme Court, 86 S.Ct. 304. While plaintiffs in the D.C. cases had alleged negligence of the Federal Aviation Agency employees on duty at the Washington Air Route Traffic Control Center under whose jurisdiction the Capital Airlines Viscount was at the time of the accident, proof of this negligence had been specifically withheld at the 1961 trial.

Further, at the 1961 hearing, Judge Holtzoff found that neither the pilot nor co-pilot of the Viscount was negligent. This finding was affirmed by the Court of Appeals for the District of Columbia. The Supreme Court denied certiorari, 375 U.S. 954, 84 S.Ct. 445, 11 L.Ed.2d 314 (1963).

Following the conclusion of the 1961 trial of the D.C. cases, the cases before the United States District Court for the Western District of Pennsylvania were heard. Chief Judge Gourley came to the same conclusion in the Pennsylvania cases as Judge Holtzoff had come to in the District of Columbia cases. However, the Third Circuit reversed the District Court's decision as to the issue of the agency of the United States. The United States Supreme Court granted certiorari and affirmed the Third Circuit's finding that no agency relationship existed between the United States and McCoy. It is interesting to note, in passing, that Mr. Justice Harlan in that opinion relegated the plaintiffs to the mercy of Congress for any recovery.

On the motion of the United States, the Supreme Court reopened the D.C. cases and reversed the judgment of the Circuit Court of Appeals for the District of Columbia in conformance with its affirmance of the Third Circuit's opinion that McCoy was not an agent of the United States. In the course of its opinion of November 22, 1965, the Court remanded the cases for further proceedings "with respect to the unresolved issues tendered in respondents' bill of complaint." 86 S.Ct. 304.

On the same day, the judgments in the Pennsylvania cases were modified and remanded for "proceedings with respect to the unresolved issues tendered in petitioners' bill of complaint, and . . in all other respects affirmed." 86 S.Ct. 305. In both remands, Mr. Justices Harlan and Clark dissented.

Again the D.C. cases came on before Judge Holtzoff for trial in June of 1966 on the issue of the negligence of the F. A. A. employees on duty at the Washington Air Route Traffic Control Center. The United States sought to introduce evidence as to the negligence of the pilot and co-pilot of the Viscount. Judge Holtzoff refused to allow this because he had resolved that issue in his decision of November 20, 1961, in which he stated, at page 13:

"The pilot and co-pilot of the Capital Airlines plane were neither negligent nor contributorily negligent at the time of and prior to this occurrence."

He also found that inasmuch as the jet trainer was flying from behind and underneath the Viscount, neither the pilot nor the co-pilot could have seen the approach of the jet before it collided with the Viscount. This finding was never disturbed; however, it was not expressly affirmed as it had been in the Pennsylvania cases.

Judge Holtzoff again found for the plaintiffs in the D.C. cases on the grounds that the accident was the result of the negligence of the F. A. A. employees. Judge Holtzoff further found that there was an agency relationship between the F. A. A. employees and the United States. Thus the United States was responsible for their acts of negligence.

As the court has mentioned before, Judge Holtzoff's decision of June 30, 1966, is now on appeal. The Pennsylvania cases have not been retried.

With this background, the position of the parties on the issues raised by the motions for summary judgment can now be examined.

The plaintiffs herein are seeking collaterally to estop the United States from denying its negligence on the ground that the issue of negligence of the United States was litigated and determined against it by the United States District Court for the District of Columbia in the cases cited above. The United States opposed the plaintiffs' motion on the grounds that the doctrine of collateral estoppel is not applicable because the plaintiffs were not privies with parties in the cases before the District of Columbia court. The United States opposes Capital Airlines' motion in Civil Nos. 11385 and 11386 for immunity from contribution on the grounds that the issue of Capital Airlines' negligence was not litigated in the District of Columbia actions and that the relative degree of fault as between the United States and Capital Airlines was not determined in the District of Columbia actions. Further, on each motion, the United States requests that this court withhold its ruling until completion of appellate disposition of the District of Columbia cases.

The court will first dispose of the plaintiffs' motion.

■ These are suits under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 (b) and 2674 to recover money damages from the United States. The Act makes the United States liable for the negligence of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). As the accident occurred in Maryland, that provision makes the law of Maryland govern the liability of the United States for the tort involved herein. Massachusetts Bonding & Ins. Co. v. United States, 352 U.S. 128, 77 S.Ct. 186, at 187, 1 L.Ed.2d 189 (1956). Under the Court's interpretation of this statute in Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, at 592, 7 L.Ed.2d 492 (1962), this includes the whole law of the State of Maryland.

■ Inasmuch as the application of the doctrine of collateral estoppel affects the rights and obligations of the parties, this court is obliged to follow the law of Maryland to the extent that it does not conflict with the due process clause of the fifth amendment of the Constitution to determine whether mutuality is essential for collateral estoppel. The court must first determine to whose law the law of Maryland would have us look to solve this problem. Unfortunately, the Court of Appeals of Maryland has not answered this question. It has indicated, however, that it highly regards the principles enunciated in the Restatement, Conflict of Laws. See, for example, White v. King, 244 Md. 348, 223 A.2d 763 (1966), Doughty v. Prettyman, 219 Md. 83, 148 A.2d 438 (1959); and Dukes v. Eastern Tar Products Corp., 197 Md. 564, 80 A.2d 39 (1951). According to the Restatement, Conflict of Laws, § 450, the effect of a judgment upon the rights and other interests of the parties is determined by the law of the state where the judgment was rendered. The state

where the judgment was rendered also determines who are privies to the judgment. Inasmuch as the judgments, which are sought to be used to estop collaterally the United States from denying its negligence, come from the District of Columbia, the court will look to the law of the District of Columbia to determine who is bound by the judgments. Counsel for the plaintiffs admit that they are not privies to a party to the judgments rendered in the District of Columbia. The United States, however, as well as Capital Airlines, Inc., was a party to those judgments. According to the Restatement, the requirement of mutuality as an essential element of the doctrine of collateral estoppel would also be governed by the law of the District of Columbia because that is where the judgment was rendered. However, it is not necessary for this court to determine this conflict of laws question because the law of the District of Columbia and the law of the State of Maryland on the issue of mutuality is the same.

■ The parties agree that there are no Maryland or District of Columbia cases squarely on point. As the Fourth Circuit said in Graves v. Associated Transport, Inc., 344 F.2d 894, at 896 (1965), it thus becomes the duty of the court to take "into account not merely the generalizations and the dicta in cases from years past but also trends in modern legal thought" which we think would be accepted by either the Maryland Court of Appeals or the District of Columbia Court of Appeals.

If this case had been presented to either of those courts even as much as ten years ago, there is little doubt that the plaintiffs could not have used the District of Columbia cases to estop collaterally the United States from denying its negligence because both the Court of Appeals of Maryland and the Court of Appeals for the District of Columbia adhered to the proposition that mutuality was required in order to invoke the doctrine of collateral estoppel. Wiley v. McComas, 137 Md. 637, 113 A. 98 (1921); Curtis v. Maryland Baptist Union Assoc.,

176 Md. 430, 5 A.2d 836, 121 A.L.R. 1516 (1939); Moore v. United States, 120 U.S.App.D.C. 173, 344 F.2d 558 (1965) (a criminal case in which the requirement of mutuality would probably be more difficult to breach); and Brown v. Brown, 74 App.D.C. 309, 122 F.2d 219 (1941). The Fourth Circuit in *Graves* pointed out however that the mutuality rule had been breached before and that mutuality as an element of collateral estoppel has been subjected to much criticism by modern authority.

■ This court looks with favor on the modern trends in this area. See Currie, "The Contributions of Roger J. Traynor—Civil Procedure: The Tempest Brews," 53 Calif.L.Rev. 25 (1965); Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n, 19 Cal.2d 807, 122 P.2d 892 (1942); United States v. United Air Lines, 216 F.Supp. 709, 725–729 (E.D.Wash., D.Nev.1962), aff'd as to the issue of mutuality of collateral estoppel sub nom. United Air Lines, Inc. v. Wiener, 335 F.2d 379, at 404 (9th Cir.1964), cert. dismissed 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964); B. R. DeWitt, Inc. v. Hall, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967); and Nickerson v. Pep Boys, Manny, Moe & Jack, 247 F.Supp. 221 (D.Del.1965). There seem to be no compelling reasons for requiring that the party asserting the plea of collateral estoppel, even affirmatively as in this case, must have been a party, or in privity with a party, to the earlier litigation. "[W]here there is identity of issues between two suits, a party against whom judgment has been rendered in one suit is bound thereby in the other suit, even though his adversary who invokes the prior adjudication was not a party or privy to the suit in which the judgment was rendered, and would not have been bound had the judgment gone the other way." 1B Moore's Federal Practice (2nd ed. 1965), ¶ 0.412 [1], p. 1805–06 (Moore disagrees with this position, at p. 1809). Indeed, the philosophical basis for the doctrine of collateral estoppel is that a party should have a full and fair

day in court to be heard on the issue but should not be able to litigate that issue ad nauseam. There must be an end to litigation at some point. In view of the crowded dockets of the courts today, ancient principles must give way to principles based on today's realities so long as these new principles do not deprive a litigant of his day in court. In formulating a principle of law, a court does not sit in a vacuum. Rather, it must weigh the rights of an individual litigant with the rights of society. In coming to its conclusion, the court has taken into account not only the right of society to have its courts render justice as inexpensively as possible and the right of each litigant to have his day in court, but also the rights of other litigants who might have to wait to have their day in court because one litigant is allowed to litigate the same issue over and over again. Four questions must be answered in the affirmative in order for the doctrine of collateral estoppel to be applicable. Three of them were formulated by Justice Traynor in *Bernhard,* supra, 122 P.2d at 894–895. "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Before the court answers these questions, it must determine whether the position taken herein accords with the due process clause of the Fifth Amendment and the Fourteenth Amendment of the Constitution of the United States. The Supreme Court has not determined the issue. The leading case in the Court on the doctrine of res judicata and collateral estoppel was handed down in 1912. Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 32 S.Ct. 641, 56 S.Ct. 1009. In that case, the Court said: "It is a principle of general elementary law that the estoppel of

a judgment must be mutual." P. 642. The question before the Court in Bigelow was whether the Massachusetts court was bound to give full faith and credit to a New York judgment when there was no mutuality. As late as 1955 in Lawlor v. National Screen Service, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122, the Court was still requiring mutuality if estoppel was to be used.

 It would seem to this court that as long as the party against whom the judgment was sought to be used had a full and fair opportunity to be heard on the issue there would be no constitutional impediment to the application of the doctrine of collateral estoppel where there was no mutuality. All that due process requires is that "the thing to be litigated was actually litigated in a previous suit, final judgment entered, and the party against whom the doctrine is to be invoked had full opportunity to litigate the matter and did actually litigate it." United States v. United Air Lines, Inc., supra, 216 F.Supp., at 726.

The first question to be answered is whether the issue was decided in the prior adjudication identical with the one presented in the action in question. The issues determined by Judge Holtzoff that are pertinent to this motion were whether the F. A. A. employees at the Washington Air Route Traffic Control Center were negligent and whether they were the employees of the United States. The United States does not contest that it had a full and fair opportunity to litigate these issues. These issues are pertinent to the determination of the United States' liability in this case. Therefore the first and the fourth questions must be answered affirmatively.

Was there a final judgment on the merits? Again the parties admit that the judgments of the District of Columbia are final on the merits.

There is no disagreement that the United States, the party against whom the plea is asserted, was a party to the adjudication before the United States District Court for the District of Co-

lumbia in the cases sought to be used as the basis for the motions.

Even though the court is of the opinion that the plaintiffs' motion should be granted, it will, however, grant the government's request to stay its decision until the completion of the appellate disposition of the District of Columbia cases because of the strange history of the District of Columbia cases and their Pennsylvania companions on appellate review.

The court next considers Capital Airlines' motion in Civil Nos. 11385 and 11386 to estop the United States from seeking contribution from Capital Airlines.

Inasmuch as the issue of contribution is part and parcel of the issue of liability, the law of Maryland controls its determination. In Maryland, "[t]he right of contribution exists among joint tort-feasors." Md.Code Anno., Art. 50, § 17(a). It is true that Capital Airlines and the United States owed different degrees of care to the plaintiffs herein. Smith v. Baltimore Transit Co., 214 Md. 560, 136 A.2d 386 (1957); Kaplan v. Baltimore & Ohio R. Co., 207 Md. 56, 113 A.2d 415 (1955); Baltimore City Passenger Ry. Co. v. Nugent, 86 Md. 349, 38 A. 779 (1897); and Ortiz v. Greyhound Corporation, 275 F. 2d 770 (4th Cir. 1960). However, a common carrier is not liable for personal injuries suffered by a passenger where they result solely from an accident without any fault on the part of the carrier. Nugent, supra, at 358, 38 A. 779. Further, in the event that the plaintiffs succeed against both defendants, Capital Airlines would have the right to be indemnified by the United States if Capital Airlines shows that it was not in pari delicto with the United States as to the passengers, the plaintiffs' decedents. "The general rule is that, wherever the wrongful act of one person results in liability being imposed on another, the latter may have indemnity from the person actually guilty of the wrong." Baltimore & Ohio R. Co. v. County Commissioners of Howard County, 113 Md. 404,

at 414, 77 A. 930, at 933 (1910). See also, Md.Code Annot., Art. 50, § 21; 12 M.L.E. Indemnity § 6; and Park Circle Motor Co. v. Willis, 201 Md. 104, at 113, 92 A.2d 757, 94 A.2d 443 (1953).

The issue of contribution depends upon the joint tort-feasors' liability to a third party. In order for Capital Airlines to be immune from contribution, the court would have to direct a verdict in favor of Capital Airlines or to find that the negligence of the United States was the primary cause of the injuries to and deaths of the plaintiffs' decedents. Inasmuch as neither of the findings, which the court would have to make to grant Capital Airlines' motion, was made by the United States District Court for the District of Columbia, the doctrine of collateral estoppel is unavailable to Capital Airlines.

Capital Airlines' motion is premature. Therefore, the court denies it without prejudice with leave to Capital Airlines to make it at the appropriate time.